IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERICA WILLIS STEELE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>APL LOGISTICS, and )<br>STEPHEN MCELRATH, )<br>)<br>Defendants. ) | Cause No. 07C-6440 |

## PLAINTIFF ERICA WILLIS STEELE'S MEMORANDUM OF LAW IN SUPPORT OF HER RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR ABSTENTION

NOW COMES the Plaintiff, ERICA WILLIS STEELE, by and through her attorneys, SPESIA, AYERS & ARDAUGH, and for her Memorandum of Law in support of her response to Defendant's Motion to Dismiss or in the Alternative Motion for Abstention, states as follows:

## INTRODUCTION

1.      Plaintiff Erica Willis Steele (hereinafter referred to as "Steele") filed charges against Defendant APL Logistics (hereinafter referred to as "APL") with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC") on May 18, 2006. Allegations in Steele's charge included sexual harassment, harassment on the basis of race, retaliation, and racial discrimination.

2.      On May 23, 2007, Steele filed her Complaint of Civil Rights Violation with the Illinois Human Rights Commission ("IHRC"), incorporating her initial charge filed with the Department of Human Rights.  (Complaint attached as Exhibit "A").

1

3.     Upon request, Steele received a Notice of Right to Sue from the EEOC on July 9, 2007, which afforded her ninety days to file a lawsuit under Title VII. (Letter attached as Exhibit "B").

4.     In order to preserve her right to file suit in this matter, Steele filed her Complaint at Law in the Circuit Court of the Twelfth Judicial Circuit, Will County Illinois, on October 4, 2007, asserting claims for quid pro quo sexual harassment, hostile environment sexual harassment, and gender discrimination. This case was removed to the Northern District of Illinois by APL on November 14, 2007.

5.     On October 8, 2007, Steele filed a Motion to Stay with the IHRC in order to fully adjudicate her federal Title VII causes of action.

6.     Despite APL's brief in opposition to Steele's Motion to Stay, which argued that Steele was required to fully exhaust her administrative remedies prior to resorting to the court system, the IHRC granted Steele's Motion to Stay on December 11, 2007. Chief Administrative Law Judge Michael J. Evans indicated that the IHRC has an internal policy allowing claimants to first pursue federal causes of action. (Order attached as Exhibit "C").

7.     As the IHRC has stayed Steele's action, APL's Motion to Dismiss or Stay on the grounds of the doctrine of administrative exhaustion is now moot. Steele filed this federal cause of action to preserve her right to bring this claim pursuant to the EEOC's Notice of Right to Sue. As the IHRC has the policy of allowing claimants to pursue Title VII remedies in federal court, the administrative exhaustion doctrine does not bar Steele from proceeding on this cause of action before this Court.

## **ARGUMENT**

8.     Defendant APL asserts in its Motion to Dismiss that Steele's Complaint at Law, now before the Northern District of Illinois, constitutes "forum shopping." However, the law cited by APL is primarily applicable to situations where the defendant employer is a **federal** employer. In this situation, APL is a **private** employer. As such, the rules of Title VII become relevant to this issue and have clearly been followed by Steele.

**I.    EXHAUSTION OF ADMINISTRATIVE REMEDIES IS NOT REQUIRED BECAUSE TITLE VII PROCEDURES APPLY, AS SUPPORTED BY THE HUMAN RIGHTS COMMISSION'S GRANTING OF PLAINTIFF'S MOTION TO STAY.**

9.     Although the Administrative Procedure Act and the Human Rights Act require the exhaustion of administrative remedies prior to seeking judicial review, Title VII has its own requirements. *Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006). Under Title VII, a claimant is required to: (1) file a timely charge with the EEOC; and (2) wait to bring suit until the claimant receives a "right to sue" letter from the EEOC. *Id.* citing 42 U.S.C. §§ 2000e-5(c), (e), (f)(1). "**Nowhere** in Title VII is it required that a plaintiff must complete the state administrative process before starting federal proceedings." *Zugay v. Progressive Care*, 180 F.3d 901, 902 (7th Cir. 1999) (*emphasis added*).

10.    With regard to state agencies, Title VII requires that "state and local agencies [be] given an initial deferral period of at least sixty days to investigate a charge of discrimination." *Id.* Such deferral period affords state agencies the "reasonable opportunity to act under State law before the commencement of any Federal proceedings." *Id.* As to exhaustion, Illinois courts have held that the exhaustion of administrative remedies is certainly required when the claimant is a **federal** employee.

3

*Doe,* 456 F.3d at 712. In cases involving federal employees, the EEOC and other administrative bodies can provide full relief through the administrative process. *Id.* However, this is not the case with private employees, because the EEOC must file suit or issue a right to sue letter to the claimant in order to obtain relief under Title VII. *Id.*

11. Plaintiff, Erica Steele, has clearly adhered to the provisions of Title VII in moving forward with her federal cause of action. As required by Title VII, Steele timely filed her charge with the EEOC and waited to receive her right to sue letter prior to instituting action in the judicial system. Further, Steele's claim was before the IHRC for a period of longer than sixty days, which afforded the agency the requisite "reasonable opportunity" to resolve the matter under Illinois law. Steel fully cooperated with the IHRC. The IHRC then granted Steele's Motion to Stay in order to allow her to pursue her federal cause of action, citing its Commission policy of allowing claimants to pursue Title VII claims first if they so choose.

12. Although exhaustion of administrative remedies is generally required of federal employees, Steele worked for APL Logistics, a **private** employer. Therefore, strict compliance with the exhaustion doctrine is not mandatory according to the terms of Title VII. *Doe,* 456 F.3d at 712. Steele was required to adhere to the provisions of Title VII and did so appropriately. As the Chief Administrative Law Judge of the IHRC ruled in favor of Steele's progression of this matter in federal court, Defendant's arguments regarding the exhaustion of the administrative process are no longer applicable and cannot prevent this matter from moving forward in federal court.

13. It is clear that APL's allegations of "forum shopping" and "waste of judicial resources" are simply not accurate in this situation. In filing her lawsuit, Steele was

preserving her right, as granted by the EEOC, to bring this matter into federal court. The IHRC Order granting Steele's Motion to Stay the administrative proceeding allows for the pursuit of Plaintiff's remedies in the Northern District of Illinois. As such, this matter may be fully adjudicated in this forum.

    **II.    THIS COURT MAY PROPERLY CONSIDER PLAINTIFF'S CLAIM OF QUID PRO QUO SEXUAL HARASSMENT BECAUSE THE CHARGE BEFORE THE EEOC DESCRIBED THE SAME CONDUCT.**

    14.    *Jenkins v. Blue Cross,* provides the test to include a count of discrimination in a federal cause of action which was not specifically included in charges filed with the EEOC. The *Jenkins* test is two-pronged and requires:

    (1) [T]he claim [must be] like or reasonably related to the EEOC charges; and
    (2) [T]he claim in the complaint reasonably could develop from the EEOC investigation into the original charges.

*Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995) citing *Jenkins v. Bue Cross Mutual Hosp. Ins., Inc.*, 538 F.2d 164 (7th Cir. 1976).

    15.    At a minimum, the EEOC charge and the complaint must have a factual relationship and must "describe the *same conduct* and implicate the *same individuals.*" *Harper*, 45 F.3d at 148. In making this determination, the Northern District has given plaintiffs "significant leeway," and when determining the scope of the EEOC charge, courts use the "utmost liberality." *Brady v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 2007 WL 4305932, *2 (N.D.Ill.) citing *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 906 (7th Cir.1981).

    16.    APL's Motion to Dismiss argues that Steele's claim of quid pro quo sexual harassment is not properly before this Court because it was not specifically detailed in Steele's initial charge with the EEOC. However, in the charges filed with the EEOC,

5

Steele labeled her charge of sexual harassment as follows: "Sexual harassment, beginning on or about January 2, 2006 and continuing through May 15, 2006." The facts pertaining to this charge were described in the following manner:

> During this period of time, McElrath has engaged in numerous actions which I perceived to be sexually offensive and harassing, such as engaging in **inappropriate touching** activities; by attempting to hug me; by making **verbal statements**, such as I didn't know that you had such groceries back there; or, I'd leave my wife for you; you look good in those jeans, and other numerous comments which I believe to be **offensive**, **derogatory** and **unprofessional**.

Complaint of Civil Rights Violation, Exhibit "A", at pg. 2 (*emphasis added*).

   17.   In Steele's Complaint at Law, now before this Court, she recited the following facts pertaining to the quid pro quo sexual harassment asserted in Count I:

> 4.   STEPHEN MCELRATH (hereinafter "MCELRATH"), was an APL employee and STEELE's immediate supervisor during this time period.
>
> 5.   Beginning on or about January 1, 2006, and continuing through May 15, 2006, STEELE was subjected to harassment by MCELRATH in the form of **unwanted physical contact** with Plaintiff's person, **derogatory comment**s regarding Plaintiff's appearance, and **requests for sexual favors**.
>
> 6.   Upon each act of harassment by MCELRATH, STEELE immediately objected to his behavior, expressed that she was offended by the behavior, and demanded that he stop at once.
>
> 7.   On information and belief, despite STEELE's objection, MCELRATH continued to harass her, offering to influence promotions, pay raises, and other employment privileges available to STEELE in exchange for sexual favors…
>
> 14.   On information and belief, during STEELE's employment, MCELRATH continuously subjected STEELE to harassment of a sexual nature, and offered to make privileges of employment, such as promotions and pay raises, available to STEELE in exchange for sexual favors.

6

       15.   On information and belief, STEELE's submission to or rejection of MCELRATH's sexual advances provided the basis for employment decisions regarding her position.

Complaint at Law, at paragraphs 4-7, 14-15 (*emphasis added*).

       18.   The allegations outlined in Steele's Complaint pass the *Jenkins* test.  First, a claim of quid pro quo sexual harassment is "like or reasonably related" to the charge of sexual harassment filed with the EEOC.  *Harper,* 45 F.3d at 148.  Steele's claims of hostile environment sexual harassment and quid pro quo sexual harassment are simply more specific claims of harassment than that which was alleged in her EEOC charge.  Second, Steele's specific allegation of quid pro sexual harassment could "reasonably develop from the EEOC investigation into the original charges."  *Id*.  After the investigation and the administrative process, it would be reasonable for Steele's general theory of sexual harassment to develop into more specific allegations.

       19.   Further, both the initial charge of sexual harassment and the count of quid pro quo sexual harassment implicate the same agent of APL, Stephen McElrath.  In addition, both describe the same conduct of unwanted and inappropriate touching, derogatory verbal comments, and requests for sexual favors.  In construing the EEOC charge with the "utmost liberality" as is customarily done by Illinois courts in this circumstance, Steele's claim of quid pro quo sexual harassment falls within the scope of her initial EEOC charge.  Therefore, it is permissible for this Court to engage in judicial inquiry of Steele's claim for quid pro quo sexual harassment.

### III. THIS COURT MAY PROPERLY CONSIDER PLAINTIFF'S CLAIM OF QUID PRO QUO SEXUAL HARASSMENT BECAUSE APL WAS ON NOTICE OF ITS POTENTIAL VICARIOUS LIABILITY

20. Plaintiff's claim of quid pro quo sexual harassment is properly before this Court. Upon Steele's filing of her charge of sexual harassment with the EEOC, APL was instantly on notice of its potential liability for **any** type of sexual harassment. The Illinois Human Rights Act provides the following with regard to employer liability for sexual harassment:

> [F]or any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment; provided, that an employer shall be responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial or nonsupervisory employes only if the employer becomes aware of the conduct and fails to take reasonable corrective measures.

775 ILCS 5/2-102(D).

21. In interpreting this section of the Human Rights Act, Illinois courts have found:

> This statute clearly indicates that employers are liable for sexual harassment of their employees by supervisory personnel **regardless of whether it is quid pro quo or "hostile environment" type harassment** and regardless of whether the employer knew of such conduct.

*Bd. of Directors, Green Hill Country Club v. IHRC*, 514 N.E.2d 1227, 1230 (Ill. App. 5th Dist. 1987) (*emphasis added*).

22. Steele's charge of sexual harassment with the EEOC described the conduct of her direct supervisor, Stephen McElrath. Due to the nature of this supervisory relationship, APL was immediately on notice of its potential vicarious liability for any and all actions constituting sexual harassment committed by agent Stephen McElrath, regardless of their specific label.

23.     Further, in her Complaint at Law, now before this Court, Steele's count of quid pro quo sexual harassment named Stephen McElrath "Individually and as Agent of APL Logistics."  Even if McElrath may not be held individually liable for his actions constituting sexual harassment, APL may properly be held vicariously liable through established agency principles.

24.     The United States Supreme Court has held that a "tangible employment action taken by [a] supervisor becomes for Title VII purposes the act of the employer." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762 (1998).  A tangible employment action has been defined as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id.* at 761.  A Suspension Pending Termination, received by Steele from supervisor McElrath, arguably constitutes a "significant change in employment status" for purposes of imputing these actions to APL.  *Id.*

25.     The United States Supreme Court declared the following rule regarding the vicarious liability of employers for sexual harassment by supervisors:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.  When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence…The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Id.* at 765.

26.     Most importantly, the United States Supreme Court held that "**the labels** *quid pro quo* **and hostile work environment are <u>not controlling for purposes of establishing employer liability.</u>**" *Id.* (*emphasis added*).  Clearly, this holding resolves the issue at hand.  Stephen McElrath was properly named in Steele's Complaint at Law "Individually and as Agent of APL Logistics."  The United States Supreme Court has held that an employer may be held vicariously liable for an agent's acts constituting sexual harassment, regardless of the type of sexual harassment alleged.  *Id.*  Therefore, it is immaterial that Steele has included a specific allegation of quid pro quo sexual harassment in her Complaint at Law.  APL may be found vicariously liable for **any** acts constituting sexual harassment, and was on notice of this potential liability upon Steele's filing of her charge of sexual harassment with the EEOC.

27.     Therefore, any claims of sexual harassment arising out of the actions of APL agent, Stephen McElrath, came as no surprise to APL.  As such, APL had proper notice of its potential liability for Plaintiff's claim of quid pro quo sexual harassment.  This Court may properly hear Steele's claim of quid pro quo sexual harassment, even if Stephen McElrath may not be found individually liable.

## CONCLUSION

28.     The Plaintiff, Erica Willis Steele, properly brought this matter in federal court.  As a private employee, Steele was not bound by the strict confines of the administrative exhaustion doctrine.  Instead, Steele was required to follow the procedures outlined in Title VII, and she has in fact done so.  The Illinois Human Rights Commission has determined that the proper forum for the adjudication of Steele's claim is the Northern District of Illinois.  (Exhibit "C").  Further, Steele's claim of Quid Pro Quo

Sexual Harassment was properly described in her charge filed with the EEOC. APL Logistics may be found vicariously liable for any of its agents' actions which constitute sexual harassment. APL Logistics was on notice of its potential liability for any charge of sexual harassment, regardless of its specific label, when Steele filed her charge with the EEOC. As such, Plaintiff respectfully requests that Defendant APL's Motion to Dismiss or in the Alternative Motion for Abstention be denied.

    Respectfully Submitted,

    SPESIA, AYERS & ARDAUGH

    /s/ Mark A. Lichtenwalter

Mark A. Lichtenwalter # 6280473
SPESIA, AYERS & ARDAUGH
1415 Black Road
Joliet, Illinois 60435
(815) 726-4311